

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ESTATE OF MATTHEW SETTLES, by
and through its successor in interest
BRENDA SETTLES, and BRENDA
SETTLES,

                                    Plaintiffs,

v.

COUNTY OF SAN DIEGO, et al.,

                                    Defendants.

Case No.:  3:24-cv-352-CAB-MSB

**ORDER PARTIALLY GRANTING
MOTIONS TO DISMISS**

**[Doc. Nos. 73, 81]**

Plaintiffs Estate of Matthew Settles, by and through its successor in interest Brenda Settles ("Estate"), and Brenda Settles (collectively, "Plaintiffs") sued Defendants County of San Diego, et al. for the death of Matthew Settles ("Decedent") on August 16, 2022 while he was held in administrative segregation at George Bailey Detention Facility ("GBDF").  The Court partially granted motions to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  [Doc. No. 67.]  Plaintiffs then filed a Second Amended Complaint ("SAC") on May 30, 2025.  [Doc. No. 68.]  The SAC asserts eight causes of action against eight named Defendants and twenty Doe Defendants.  [SAC ¶¶ 20–33.] Pending before the Court are two motions to dismiss the SAC pursuant to Fed. R. Civ. P.

12(b)(6).  [Doc. Nos. 73, 81.]  For the reasons discussed below, the Court **PARTIALLY GRANTS** the motions to dismiss.

## I.    BACKGROUND

### A.    Relevant Facts

Given the length of the SAC and this case's previous opinion outlining the case, [Doc. No. 67], the Court recites only the core allegations, many of which remain the same. The Court takes the alleged material facts as true and construes them in the light most favorable to Plaintiff.  *Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007).

While hospitalized at San Diego County Psychiatric Hospital ("County Mental Health" or "CMH"), Decedent was transferred to the San Diego Central Jail ("Central Jail" or "SDCJ") on June 4, 2022 after expressing aggression toward another patient.  [SAC ¶ 64.]  Decedent suffered from severe psychiatric issues and had been under permanent conservatorship since November 2019.  [SAC ¶ 45.]  As alleged, Decedent had no right to refuse medical treatment.  [*Id.*]  Decedent had previously put himself in harm's way, including by leaping in front of the San Diego trolley and by jumping into the bear exhibit at the San Diego Zoo, where he was mauled.  [SAC ¶ 40.]

Plaintiffs allege that during Decedent's intake process at the Central Jail, no medical staff nor correctional officer flagged within the Jail Information Management System ("JIMS") that Decedent was under permanent conservatorship and should have been housed in the Psychiatric Security Unit ("PSU").  [*See* SAC ¶¶ 49–53, 66–67, 100.]  The PSU is a psychiatric care facility operated by the San Diego County Sheriff's Department at the Central Jail that offers 24-hour mental health treatment.  [SAC ¶ 50.]  Plaintiffs allege that the Sheriff's PSU Policy requires people like Decedent—who are deemed gravely disabled and appointed a permanent conservator—to be admitted to the PSU.  [SAC ¶ 51.]  Decedent was previously housed in the PSU prior to his June 4, 2022 booking at the Central Jail.  [SAC ¶ 53.]  During that time, he apparently refused medications on a routine basis,

1  adhered to poor hygiene, and at one point stabbed himself in the eye with a hypodermic
2  needle after hearing a voice commanding that he do so.  [SAC ¶¶ 60–62.]

3      On his third day of custody at SDCJ, Decedent's cellmate allegedly assaulted him,
4  and Decedent received emergency care at the hospital.  [SAC ¶ 73.]  He returned to SDCJ
5  upon his discharge from the hospital.  But instead of placement in the PSU, he was housed
6  in a medical observation unit ("MOB") where he continued to refuse treatment.  [SAC ¶¶
7  75–76.]  At least one medical professional requested an evaluation of whether Decedent
8  had the capacity to refuse treatment.  [SAC ¶ 78.]

9      On July 13, 2022, Decedent apparently suffered a skull fracture due to an assault he
10  suffered while housed in MOB. [SAC ¶¶ 79–80.]  This time, after receiving treatment,
11  Decedent was placed into administrative segregation rather than the PSU.  [SAC ¶¶ 81–
12  83.]  Plaintiffs allege that administrative segregation amounted to solitary confinement.
13  [SAC ¶¶ 84–85.]  Plaintiffs generally allege that administrative segregation is very harmful
14  to those, like Decedent, who are severely incapacitated and are at risk for suicide.  [*Id*.]

15      From there, Plaintiffs describe Decedent's steady decline.  They identify numerous
16  Defendants as having some involvement in the decision to place Decedent in administrative
17  segregation, the failure to remove him from administrative segregation, and the failure to
18  provide adequate medical care.  These Defendants include various medical care providers,
19  mental health professionals, and jail officers.  [*See generally*, SAC ¶¶ 83–100, 109–134.]
20  As pleaded, the healthcare providers checked on Decedent with some regularity, though
21  there were days where he was not seen by any medical or mental health professionals.  [*Id.*]
22  Decedent's condition continued to deteriorate in administrative segregation.  [*See, e.g.*,
23  SAC ¶¶ 111, 120.]

24      On August 16, 2022, Decedent was found hanging in his cell.  [SAC ¶ 127.]  The
25  day of his death, he was third in line to be transferred to a state hospital for mental health
26  treatment.  [SAC ¶ 134.]  The District Attorney had agreed to dismiss all pending charges
27  against him once he was so hospitalized.  [*Id.*]
28  ///

B. **PROCEDURAL BACKGROUND**

This case already has a lengthy procedural history. Most recently, the Court dismissed several defendants and claims in the First Amended Complaint, some with prejudice and others with leave to amend. [Doc. No 67.]

There are now two motions to dismiss the SAC under Fed. R. Civ. Proc. 12(b)(6). The first is by the Medical Defendants Janet Medenwald-Hogg, Jason Balingit, Anthony Cruz, Naphcare of San Diego, LLC, and NaphCare, Inc. [Doc. No. 81.] The second is by the County Defendants, which include San Diego County, the San Diego Sheriff's Department, the San Diego County Central Jail, and the George Bailey Detention Center (collectively, "County of San Diego"), as well as Aseel Ross and Does 1–20. [Doc. 73-1 at 8–9.][1]

II. **LEGAL STANDARD**

The familiar standard applies for a motion to dismiss. Fed. R. Civ. P. 12(b)(6) permits a party to file a motion to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Vague and conclusory allegations" concerning government involvement in civil rights violations are insufficient to withstand a motion to dismiss. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

III. **ANALYSIS**

A. **Allegations Against the Doe Defendants**

Plaintiffs have reduced the number of Doe Defendants from over 100 in the FAC to 20 in the SAC. Does 1–5 are housing deputies assigned to the portion of the GBDF where

---

[1] Some of the individuals sued appear to be private actors, but no Defendant has raised the argument that there is a state action problem challenging the Section 1983 claims. *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (listing factors by which a private actor can be viewed as state actor). Nor does the Court see any obvious state action issue from the face of the SAC.

4

Matthew Settles was housed. [SAC ¶ 30.] Does 6–20 are unknown "jail staff, detention officers, JPMU ('classification') officers, medical staff, medical providers, mental health staff, mental health providers, supervisors, employees, agents, contractors, and final policymakers who substantially contributed to the acts and omissions giving rise to the damages claimed herein." [SAC ¶ 31.] Despite the SAC's reduced number of alleged Doe Defendants, County Defendants argue that Plaintiffs' accusations remain too generalized to satisfy federal and state pleading standards for Doe defendants. [Doc. No. 73-1 at 15–18.] Plaintiffs acknowledge the need for individualized allegations and contend that they have "endeavored to be guided by this Court's admonishment" to so plead each Doe's involvement. [Doc. No. 82 at 13.] The Court disagrees.

Plaintiffs are still unable to "furnish the information necessary to identify the defendant," as Plaintiffs acknowledge they must. [Doc. No. 82 at 16 (quoting *Keavney v. Cnty. of San Diego*, 2020 U.S. Dist. LEXIS 128512, *8 (S.D. Cal. 2020)).] For example, Plaintiffs' opposition to the County Defendants' motion to dismiss cites paragraphs 127–130 and 226–227 of the SAC as evidence of individualized factual allegations against Does 1-5. [Doc. No. 82 at 16–17.] None of these paragraphs even mention Does 1–5, let alone make individualized factual allegations against them. Indeed, the only difference the Court can discern between Plaintiffs' allegations against the Doe Defendants in the FAC and SAC is a reduction in total number and the splitting of remaining Does into two groups—Does 1–5 (GBDF housing staff) and Does 6–20 (a group that sweeps in jail staff to policymakers). This is insufficient. The Court again **GRANTS** the County Defendants' motion to **DISMISS** Does 1–20.

### B.    Qualified Immunity

Defendants Cruz, Medenwald-Hogg, Ross, Balingit, Ortiz, and Boyd assert a qualified immunity defense against Plaintiffs' first and second causes of action. [Doc. No. 81-1 at 16-17]. Plaintiffs argue that under *Jensen v. Lane Cnty.*, 222 F.3d 570 (9th Cir. 2000), the defense of qualified immunity is unavailable to private medical providers contracted to provide care in a prison. [Doc. No. 85 at 27.] In *Jensen*, the Ninth Circuit

held that a private medical doctor providing contracted mental health services to a county was not entitled to qualified immunity. 222 F.3d at 576–79. Defendants argue that the present case is distinguishable because Plaintiffs have not alleged the performance of any non-medical, administrative tasks. [Doc. No. 89 at 6.] The Court finds *Jensen* squarely on point and is not persuaded by Defendants' superficial attempts to distinguish it based on the amount of non-medical, administrative tasks performed by the Defendants.

The motion to dismiss based on the affirmative defense of qualified immunity is **DENIED**.

### C. First Cause of Action: Violation of Fourteenth Amendment Pursuant to 42 U.S.C. Section 1983 (Successor in Interest)

Plaintiffs plead a § 1983 claim against Defendants Cruz, Medenwald-Hogg, Ross, Balingit, Ortiz, Boyd, and Does 1–20 for deliberate indifference to Decedent's medical needs. [SAC ¶¶ 135–144.]

To sustain a Fourteenth Amendment claim in this context, Plaintiffs must show *objective* deliberate indifference. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). To do so, Plaintiffs must allege sufficient facts to show that: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Id.* The Supreme Court has explained that "mere lack of due care by a state official" does not "'deprive' an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)). This Circuit has held that a plaintiff needs "more than negligence." *Gordon*, 888 F.3d at 1125.

The Court analyzes the arguments raised by each group of Defendants in their respective papers.

### i. Defendants Cruz, Balingit, Medenwald-Hogg, and Ross [Doc. No. 81]

Defendant Cruz is a psychiatrist employed by NaphCare, Inc. and/or Naphcare of San Diego, LLC ("Naphcare") who provided mental health services at the Central Jail in July 2022. [SAC ¶¶ 23.] Plaintiffs allege that Dr. Cruz was responsible for providing mental healthcare to Decedent, including reviewing Decedent's medical chart and history on June 29, 2022 and participating in a meeting on July 15, 2022 where the decision was made to place Decedent in administrative segregation at the Central Jail. [SAC ¶¶ 77, 83.] Plaintiffs also claim that—despite Decedent's known psychiatric history and risk—Dr. Cruz failed to appropriately treat Decedent or flag that Decedent should not be placed in administrative segregation. [SAC ¶¶ 89–90.] Defendants respond that Plaintiffs do not allege how Dr. Cruz made an intentional decision to put Decedent in administrative segregation, that the alleged decision put Decedent at substantial risk of suicide, or that Dr. Cruz did not take reasonable available measures to abate such risk. [Doc. No. 81-1 at 13.] The Court disagrees.

As opposed to the FAC, the SAC now alleges Dr. Cruz's involvement in the decision to place Decedent in administrative segregation and how that decision was connected to his death. The SAC alleges that Dr. Cruz reviewed Decedent's extensive mental health and detention history and therefore knew, or should have known, the risk of placing Decedent in administrative segregation instead of a PSU. [SAC ¶ 77 (alleging Dr. Cruz reviewed Decedent's chart on June 29, 2022).] The SAC also alleges that a reasonable mental health professional would understand the risks of administrative segregation for individuals with histories of severe mental health illness. [SAC ¶¶ 84–90, 101–08.] And the SAC alleges Dr. Cruz participated in the meeting where the decision was made to place Decedent in administrative segregation. [SAC ¶ 83.] Though Dr. Cruz's actions may ultimately be found reasonable, or his actions at a different facility and a month before Decedent's death too attenuated, those are factual determinations the Court declines

to make at this juncture.  The motion to dismiss the first cause of action against Defendant Cruz is therefore **DENIED**.

The Court similarly **DENIES** the motion to dismiss the first cause of action against Defendant Balingit, a psychiatric nurse practitioner employed by Naphcare who participated in the care of Decedent during his time in administrative segregation at GBDF. The Court previously dismissed the claim against Defendant Balingit because Plaintiffs alleged no facts that Defendant Balingit "had anything to do with placing the Decedent into administrative segregation. Nor do they plead that Defendant Balingit objectively appreciated the risk associated with administrative segregation." [Doc. No. 67 at 11.] The SAC now contains allegations about the objective appreciation of the risk to Decedent of administrative segregation.  [*See* SAC ¶ 114 ("As a psychiatric nurse practitioner, [Defendant Balingit] was also aware that the medical literature and caselaw clearly established that placement of seriously mentally ill inmates in administrative segregation created a high risk of suicide."), ¶ 115 ("As an experienced psychiatric nurse practitioner, Defendant Balingit knew that relying on inmates to self-report risks of suicide and self-harm is completely unreliable.").]  The SAC also explains that Plaintiffs' theory is not that Defendant Balingit placed Decedent in administrative segregation, but instead that his mental health care providers, including Defendant Balingit, should have recommended his removal to a PSU, consulted with his conservator due to treatment refusal, and coordinated with his case manager.  [*See, e.g.*, *Id.* ¶ 258.]  The SAC therefore supplies sufficient allegations, including the facts in the incorporated declarations by clinicians in similar cases, that someone in Defendant Ballingit's position should have been aware of the allegedly high risk of harm that could befall Decedent in administrative segregation.  *See Castro*, 833 F.3d at 1071.  At this stage, the Court draws that inference in Plaintiffs' favor. *See Retail Clerks Int'l Ass'n, Loc. 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963) (a court may infer a fact from those alleged).

Defendant Medenwald-Hogg is a psychiatrist employed by Naphcare who participated in the care of Decedent, including an alleged chart check on June 11, 2022 and

a telepsychiatry evaluation on July 23, 2022. [SAC ¶¶ 24, 74, 94.] The Court's previous order denied a motion to dismiss the § 1983 deliberate indifference claims against her because even though "Defendant Medenwald-Hogg's actions may have been entirely reasonable . . . at this stage, the Court declines to make this factual determination." [Doc. No. 67 at 12.] Defendant Medenwald-Hogg acknowledges the prior denial of dismissal but says the arguments were repeated (1) to avoid waiver and (2) because Plaintiffs allegedly amended the factual allegations against Dr. Medenwald-Hogg. [Doc. No. 89 at 4.] Defendant Medenwald-Hogg points to no specific facts that were changed in the SAC. Nor does she cite any case supporting the need to move again after the Court found the prior complaint sufficient to survive 12(b)(6) dismissal. The Court again **DENIES** the motion to dismiss the § 1983 claim against Dr. Medenwald-Hogg.

Similarly, the Court again **DENIES** the motion to dismiss the § 1983 claim against Defendant Ross. The Court's previous order allowed Plaintiffs to "proceed with their Section 1983 claim against Defendant Ross" because Plaintiffs pleaded that "Defendant Ross knew of Decedent's status on a conservatorship, observed Decedent's worsening condition days before his suicide, and failed to take any action to remove him from administrative segregation." [Doc. No. 67 at 13.] Plaintiffs' opposition points out the Court's previous order, which Defendants do not address.

### ii. Defendants Ortiz and Boyd [Doc. No. 73]

Defendants Ortiz and Boyd are housing deputies at GBDF who were responsible for conducting the safety checks of Matthew Settles' housing module on the day he died. [SAC ¶ 140.] Plaintiffs repeatedly conclude that these Defendants "violated Matthew's constitutional rights when they performed the deficient and untimely safety checks." [SAC ¶ 140; *see also id.* ¶¶ 27–28, 30, 133.] The totality of Plaintiffs allegations against these Defendants, therefore, is that they conducted a safety check on Decedent at a 75-minute interval instead of a 60-minute interval. This is insufficient. The Complaint wholly lacks the requisite factual allegations for a finding of deliberate indifference, namely that Defendants Ortiz and Cruz intentionally conducted their check fifteen minutes late, or that

a reasonable housing officer in the circumstances would have appreciated the high degree of risk of conducting a safety check fifteen minutes late.    *See Castro*, 833 F.3d at 1070; *Cavanaugh v. Cnty. of San Diego*, No. 3:18-CV-02557-BEN-LL, 2020 WL 6703592 at *13 (S.D. Cal. Nov. 12, 2020), *aff'd*, No. 20-56311, 2021 WL 6103115, at *1 (9th Cir. Dec. 22, 2021) (dismissing § 1983 claims because plaintiff did not allege the officer's "less than thorough shift counts were the result of an intentional decision rather than mere or even gross negligence or oversight").

Finally, Plaintiffs make much of the existence of a pretrial detainee's Constitutional right to safety checks in *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) ("*Gordon II*").  However, *Gordon II's* recognition of the existence of this right does not abrogate the fundamental pleading requirements for stating a claim of deliberate indifference.

The claims in the first cause of action against Defendants Ortiz and Boyd are **DISMISSED**.

### D.    Second Cause of Action: Right of Association Claim (Brenda Settles)

Plaintiffs bring a Section 1983 right of association claim against Defendants Cruz, Medenwald-Hogg, Ross, Balingit, Ortiz, Boyd, and Does 1–20.  [SAC ¶¶ 145–157.] Plaintiffs' right of association claim is based on the theory that the above Defendants caused Decedent's death and therefore violated her Fourteenth Amendment right to association with her son.  [SAC ¶ 152.][2]  The Court's previous opinion dismissed the FAC's claims right of association claims against all defendants except Defendants Medenwald-Hogg and Ross because the FAC did not contain facts meeting the "shocks the conscience standard."  [Doc. No. 67 at 18 (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137

---

[2] Strangely, Defendants' opposition argued that Plaintiffs' theory was that *Decedent's right to association* with his mother was violated by his detention and lack of appropriate care or placement.  [Doc. No. 73 at 23 ("[T]he SAC states that because Decedent was place in administrative segregation . . . *his* constitutional right to association was violated.") (emphasis added).]  However, the SAC's second cause of action is by Brenda Settles in her own right for the deprivation "of *her* liberty interest in her relationship with her son[.]"  [Doc. No. 68 at ¶ 152 (emphasis added).]

(9th Cir. 2008)).]  Deliberate indifference may be "conscience-shocking" if the "official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013).  The standard is an objective one.  *See Gordon*, 888 F.3d at 1124–25.

Given the Court's analysis of Plaintiffs' first cause of action, Plaintiffs have not alleged sufficient facts that would rise to the level of conscience shocking behavior to sustain a § 1983 claim against Defendants Ortiz and Boyd.  The second cause of action against them is **DISMISSED**.  However, the Court has allowed the § 1983 claims to proceed against Defendants Medenwald-Hogg, Ross, Balingit, and Cruz and therefore **DENIES** the motion to dismiss the second cause of action against these Defendants too.

### E.    Third Cause of Action: Monell Liability Claims Against the County of San Diego (Brenda Settles and Successor in Interest)

Plaintiffs' third cause of action is a *Monell* claim against the County of San Diego under the Due Process Clause of the Fourteenth Amendment.  [SAC ¶ 159.]  Plaintiffs appear to allege both traditional and omission *Monell* theories related to nine purported policies, practices, and customs maintained by the county.  [*See* SAC ¶ 160.]  Although the Plaintiffs frame their argument in different ways, they amount to the assertion that the County's procedures for dealing with mentally ill detainees were deficient, that the County knew or should have known of these deficiencies, and that the County's deliberate indifference to these deficiencies resulted in Decedent's death.  Defendants argue that the SAC does not "allege how each [policy, practice, or custom] was deficient, how each Policy caused Decedent harm, and how that policy amounted to deliberate indifference." [Doc. No. 73 at 26.]

### 1.    Monell Policy/Custom Claim

First is the traditional *Monell* theory. To survive a motion to dismiss under this theory, Plaintiffs must allege (1) that the Decedent was deprived of his constitutional rights by Defendants and their employees acting under color of state law; (2) that Defendants have customs or policies which amount to deliberate indifference to his constitutional

rights; and (3) these policies are the moving force behind the constitutional violations. *Lee v. City of Los Angeles*, 250 F.3d 668, 681–82 (9th Cir. 2001) (abrogated on other grounds). "[A] bare allegation that [the individual officers'] conduct conformed to some unidentified government policy or custom" is insufficient to state a *Monell* claim. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). Plaintiffs must plead objective deliberate indifference. Deliberate indifference under the Due Process Clause requires proof that a defendant acted with "more than negligence but less than subjective intent – something akin to reckless disregard." *Gordon*, 888 F.3d at 1125 (quoting *Castro*, 833 F.3d at 1071).

As an initial matter, the Court denied the previous motion to dismiss Plaintiffs' *Monell* claims with respect to the County's alleged policies of (1) mental health assessment at jail intake and (2) administrative segregation for severely disabled individuals. [Doc. No. 67 at 6. *See also* SAC ¶¶ 160(b), (g), 240–44.]

The SAC also alleges several more traditional *Monell* theories, namely the alleged policies of failing to "implement commonsense reforms," deficient screening for mental health at intake, failing to ensure medication continuity, and failing to share information and coordinate care for seriously ill patients. [SAC ¶ 160(a), (c), (d).]. With the exception of the first theory, discussed below, the Court finds these claims sufficient to survive a motion to dismiss. [*See* SAC ¶¶ 171–259.] For example, the SAC alleges a custom and practice of failing to properly continue medication for incoming inmates. [SAC ¶ 182.] Plaintiffs incorporate the declaration of a medical doctor in another case to support the existence of this practice and the resulting danger to detainees. [SAC ¶¶ 183–84.] Plaintiffs also allege several ways the County was aware of the dangers of failing to continue medication. [SAC ¶¶ 185–86 (reports provided to Sheriff's Department in 2017 and 2018), ¶¶ 187–88 (facts concerning a 2019 death in SDCJ and resulting litigation). Finally, Plaintiffs allege how the County of San Diego failed to ensure the continuity of Decedent's medication and that this led to his death. [SAC ¶¶ 189–92.]

1    The alleged policy of "ignoring and failing to implement commonsense reforms,
2    recommended by experts to remedy the record-setting inmate deaths and injuries in County
3    jails," [SAC ¶ 160(a)], however, is inadequately pleaded.  The theory consists only of
4    loosely pled legal conclusions without any specific factual support—which the Court is not
5    required to accept.  *See Cholla Ready Mix Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

6        *2.    Monell Omission Theories*

7        Next are the omission-based *Monell* theories of how Plaintiffs allege that the County
8    of San Diego failed to act, resulting in the violation of Plaintiffs' Fourteenth Amendment
9    rights.  These theories are predicated upon the idea that the County's failure "amounts to
10   deliberate indifference[.]"  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  Like a
11   traditional *Monell* claim, Plaintiffs must (1) establish a direct causal link between a
12   county's alleged omission and the alleged constitutional violation, and (2) plead objective
13   deliberate indifference.  *Castro*, 833 F.3d at 1075–76 (citing *City of Canton*, 489 U.S. at
14   385).  "Where a § 1983 plaintiff can establish that the facts available to city policymakers
15   put them on actual or constructive notice that the particular omission is substantially certain
16   to result in the violation of the constitutional rights of their citizens, the dictates of *Monell*
17   are satisfied."  *City of Canton*, 489 U.S. at 396 (O'Connor, J., concurring).

18       The County of San Diego yet again challenges Plaintiffs' failure to train claim,
19   which the Court already found adequately pleaded in the FAC.  [Doc. No. 67 at 8.]
20   Defendants have provided no facts or argument that would change this decision.

21       The SAC also outlines several additional *Monell* omission theories.  [SAC ¶ 160(e)
22   failing to promulgate adequate suicide prevention policies and training, (f) failing to
23   promulgate adequate policy and training to address conservatorship status and treatment
24   refusal protocols, and (h) failure to promulgate adequate safety check policy.]  As with
25   most of the traditional *Monell* theories, Plaintiffs have adequately pleaded the County's
26   alleged omission, how that omission is linked to the alleged constitutional violation, and
27   how the County had actual or constructive notice of the likelihood of a resulting
28   constitutional violation.  [SAC ¶¶ 203–216 (allegations regarding suicide prevention),

13

217–225 (allegations regarding conservatorship and treatment refusal), and 249–51 (allegations regarding safety checks).]

### F. Fourth Cause of Action: ADA Claim Against the County of San Diego (Successor in Interest)

#### 1. Reasonable Accommodation Theory

Plaintiffs allege that the County violated the Americans with Disabilities Act of 1990 ("ADA") because it did not reasonably accommodate Decedent by placing him in the PSU instead of administrative segregation. [SAC ¶ 268.] Defendants are correct that a defendant may "defeat the [reasonable accommodation] claim by showing that the plaintiff's proposed accommodation would cause an 'undue burden.'" *Mayfield v. City of Mesa,* 131 F.4th 1100, 1110 (9th Cir. 2025). However, "[t]he reasonableness of an accommodation is ordinarily a question of fact." *Lujan v. Pac. Mar. Ass'n*, 165 F.3d 738, 743 (9th Cir. 1999); *see also Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001) ("Ordinarily, whether an accommodation would pose an undue hardship on the employer is a factual question.") The Court will not make this factual determination on a 12(b)(6) motion.

#### 2. Disparate Impact Theory

Plaintiffs alternatively rely on a disparate impact theory. The Court's previous order dismissed Plaintiffs' ADA claims because the FAC did not allege disparate treatment. Now the SAC contains allegations that the County's administrative segregation policy disproportionately burdens inmates with severe mental illness, like the Decedent, in comparison to inmates without severe mental illness. [*See* SAC ¶¶ 271–76.] For example, according to Plaintiffs, inmates without severe mental illness are placed in administrative segregation for disciplinary purposes for a limited period of time and allowed access to additional facilities, whereas inmates with severe mental illness face an indefinite stay without access to those facilities. [*Id.* ¶¶ 273–75.] The County of San Diego does not substantively challenge these allegations, arguing instead that Plaintiffs have not shown that "administrative segregation had an excessively burdensome impact *on Decedent*."

[Doc. No. 73 at 34 (emphasis added).]   Whether Plaintiffs will ultimately be able prove these allegations remains to be seen, but that is not grounds for dismissing Plaintiffs' ADA claim at this stage.

### G.    Fifth Cause of Action: Violation of the Rehabilitation Act 29 U.S.C. § 794(a) Against the County of San Diego (Successor in Interest)

The Ninth Circuit has found that a claim pursuant to the Rehabilitation Act tracks the ADA.   *See Cnty. of Kitsap*, 260 F.3d at 1138 (a Rehabilitation Act claim requires intentional discrimination measured by the deliberate indifference standard).   Plaintiffs have stated a claim under the disparate impact theory of the ADA and therefore also state a claim for violation of the Rehabilitation Act.

### H.    Sixth Cause of Action: Violation of Cal. Civil Code § 52.1 (Bane Act) (Successor in Interest)

Plaintiffs bring Bane Act claims against Defendants Cruz, Medenwald-Hogg, Ross, Balingit, Ortiz, Boyd, and Does 1–20.   The Ninth Circuit has explained that the Bane Act requires a showing of coercion.   *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196 (9th Cir. 2015); *see* Cal. Civ. Code § 52.1 (requiring "threats, intimidation, or coercion").   The Ninth Circuit has adopted the position that the Bane Act does not require the "threat, intimidation or coercion" element of the claim to be different than the constitutional violation alleged. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).   An adequately pleaded claim for deliberate indifference satisfies the specific intent requirement of the Bane Act. *See id.* at 1045 ("[A] reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.").   Defendants do not contest this standard; rather, they argue that Plaintiffs have not shown deliberate indifference.   [Doc. No. 84 at 11; Doc. No. 81-1 at 18.]

Given the Court's decision that the claims against Defendants Medenwald-Hogg, Ross, Balingit, and Cruz have survived the deliberate indifference threshold at the dismissal stage, the Court finds that Plaintiffs have adequately pleaded a Bane Act claim

against those defendants based on their deliberate indifference to Decedent's medical needs.  All other Bane Act claims are **DISMISSED**.

**I.      Seventh & Eighth Causes of Action (Successor in Interest and Brenda Settles, respectively)**

The seventh and eighth causes of action are negligence and wrongful death actions against Defendants Guerra-Ramirez, Cruz, Medenwald-Hogg, Ross, Balingit, Ortiz, Boyd, Naphcare and Does 1–20.

*i.      Individual County Defendants*

In their opposition to the motion to dismiss, "Plaintiff[s] agree[] to dismiss the [negligence and wrongful death] causes of action against Defendants Guerra-Ramirez, Ross, and Does 6–20. [Doc. No. 82 at 6, 36].  The Court **DISMISSES** the SAC's seventh and eighth causes of action against these individual County Defendants.

The remaining individual County Defendants are Defendants Ortiz, Boyd, and Does 1–5.  The Court has already dismissed all claims against Does 1–5.  *See* Section III.A., *supra*.  With respect to Defendants Ortiz and Boyd, both housing officers at GBDF, Plaintiffs allege that Decedent was injured because they negligently did not make timely safety checks on Decedent immediately before his death. [Doc. No. 82 at 36.]  Defendants argue that this theory means that "the County is immune, under [Cal. Gov. Code § 844.6]," because Plaintiffs do not allege "that County Defendants knew or had reason to know [Decedent] needed medical care and failed to take reasonable action to summon it." [Doc. No. 84 at 11.]

It appears that Defendants erroneously rely on the standard for failure to summon medical care in § 845.6, instead of the general provision for injury due to negligence in § 844.6, as Plaintiffs have alleged.  [*See* SAC ¶ 293 ("The allegations [against] Defendants Guerra-Ramirez, Ortiz, and Boyd, all employees of the County of San Diego, are made under Gov. Code § 844.6.")].  Section 845.6 provides a limited exception to the *public entity* liability of § 844.6(a) when an "employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to

16

summon such medical care."  But § 844.6(d) clearly states that "[n]othing in this section exonerates *a public employee* from liability for injury proximately caused by his negligent or wrongful act or omission."  (emphasis added); *see also Collins v. Cnty. of San Diego*, 275 Cal. Rptr. 3d 290, 308 (Ca. Ct. App. 2021) ("[S]ection 844.6 provides immunity to a public entity, but does not, as the proposed instruction stated, immunize individual employees.").  As Plaintiffs point out, the seventh and eighth causes of action name Defendants Ortiz and Boyd individually; neither cause of action names Defendant County of San Diego.  [*See* SAC at ¶¶ 292, 308.]  And as Defendants argued elsewhere, "the untimely safety check, as pleaded in the SAC, appears to be akin to negligence[.]"  [Doc. No. 73 at 22.]  The Court **DENIES** the motion to dismiss the seventh and eighth causes of action against Defendants Ortiz and Boyd.

ii.    *Naphcare Defendants*

Plaintiffs acknowledge that the SAC "erroneously" named Naphcare in the seventh and eighth causes of action.  [Doc. No. 85 at 29–30.]  The Court's previous order dismissed Plaintiffs' negligence and wrongful death claims against Defendants Naphcare of San Diego, LLC and Naphcare Inc. with prejudice.  [Doc. No. 67 at 23.]  The SAC's seventh and eighth causes of action against Naphcare are again **DISMISSED WITH PREJUDICE**.

The remaining individual Naphcare Defendants are Cruz, Balingit, and Medenwald-Hogg.  These Defendants argue that the SAC is insufficient to allege the seventh and eighth causes of action because it does not contain allegations necessary for the basic elements of a claim, such as the duty of the medical professional and the standard of care.  [Doc. No. 81-1 at 18.]  Plaintiffs' two sentence response that the SAC's deliberate indifference allegations with respect to the § 1983 claims suffice does not persuade the Court.  [Doc. No. 85 at 31.]  The Court **DISMISSES** Plaintiffs' seventh and eighth causes of action against the Individual Naphcare Defendants.

///

///

17

**J.    CONCLUSION**

In summary, the Court:

1. **DISMISSES** the SAC's claims against Does 1–20;

2. **DISMISSES** the SAC's seventh and eighth causes of action against Defendants Cruz, Medenwald-Hogg, Balingit, Guerra-Ramirez, and Ross;

3. **DISMISSES** the SAC's first, second, and sixth causes of action against Defendants Ortiz and Boyd;

4. **DISMISSES WITH PREJUDICE** the SAC's seventh and eighth causes of action against Naphcare of San Diego, LLC and Naphcare Inc.;

5. **DISMISSES** the SAC's § 1983 claim against the Defendant County of San Diego based on an alleged policy of "failing to implement commonsense reforms"; and

6. Otherwise **DENIES** the Defendants' motions to dismiss.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

The SAC's remaining claims are listed below.  Defendants shall answer these remaining claims by **December 5, 2025.**

1.  First cause of action against Defendants Cruz, Medenwald-Hogg, Ross, and Balingit;

2.  Second cause of action against Defendants Cruz, Medenwald-Hogg, Ross, and Balingit;

3.  Third cause of action against Defendant County of San Diego;

4.  Fourth cause of action against Defendant County of San Diego;

5.  Fifth cause of action against the Defendant County of San Diego;

6.  Sixth cause of action against Defendants Cruz, Medenwald-Hogg, Ross, and Balingit;

7.  Seventh cause of action against Defendants Ortiz and Boyd; and

8.  Eighth cause of action against Defendants Ortiz and Boyd.

It is **SO ORDERED**.

Dated: October 30, 2025

_____
Hon. Cathy Ann Bencivengo
United States District Judge